# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LJILJANA NIKOLIC and KEVIN E. KONKEL, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>PHILIP MORRIS USA, INC., a Virginia corporation,<br><br>ALTRIA GROUP, INC., a Virginia corporation,<br><br>　　　　　Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

　　　　NOW COME plaintiffs, Ljiljana Nikolic and Kevin E. Konkel ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Ademi & O'Reilly, LLP, and for their Class Action Complaint against defendants, Philip Morris USA, Inc. ("Philip Morris"), and Altria Group, Inc. ("Altria"), (collectively "Defendants"), state as follows:

　　　　1.　　This consumer class action concerns Defendants' manufacturing, marketing, advertising, promotion, distribution and sale of cigarettes labeled and represented as "Light" or "Ultra-Light" ("light cigarettes") as delivering less nicotine to consumers and as being less harmful to consumers than regular cigarettes of the same brand, despite Defendants' knowledge that these representations were false, deceptive, misleading, and unfair.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because it is a class action filed pursuant to Fed R. Civ. P 23, Plaintiffs and the Class members are of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy, excluding interest and costs, exceeds $5,000,000.

3. Venue is proper within this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' and the other Class members' claims occurred within this District.

## PARTIES

4. Plaintiff Ljiljana Nikolic is a resident of Milwaukee County, Wisconsin.

5. Plaintiff Kevin E. Konkel is a resident of Milwaukee County, Wisconsin.

6. Philip Morris USA Inc. ("Philip Morris") is a Virginia corporation with its principle place of business located in Richmond, Virginia. Philip Morris is a wholly-owned subsidiary of Altria Group Inc., and is in the business of manufacturing, distributing, marketing and selling light cigarettes. During the relevant time period,[1] Philip Morris distributed, marketed, and sold light cigarettes in Wisconsin. Among the brand names manufactured, distributed, marketed, and sold by Philip Morris is Marlboro cigarettes.

7. Altria Group Inc. ("Altria") is a Virginia corporation with its principle place of business located in Richmond, Virginia. Altria owns, controls, oversees, and manages Philip Morris, including with respect to subsidiary policies and operations.

---

[1] Unless otherwise specified, all allegations relate to conduct or practices occurring from January 1, 2005, to the date of Judgment in this action (the "Class period").

## CLASS ACTION ALLEGATIONS

8. Plaintiffs bring this consumer class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a Class composed of:

> All Wiscosnin residents who from January 1, 2005, to the date of Judgment, purchased, not for resale, Defendants' cigarettes labeled as "Light," or "Ultra-Light". The Class excludes all federal, state, and local governmental entities, and Philip Morris USA Inc.'s and Altria Group Inc.'s directors, officers, parent corporations, subsidiaries, and affiliates.

The Class seeks **economic** damages stemming from their purchases of Defendants' light cigarettes. The Class does not seek recovery in this case for any past, current, or future **personal injury or health care** claims.

9. The joinder of all members of the Class is impracticable as the Class is believed to include thousands of individuals.

10. Plaintiffs' claims are typical of those of the other Class members, as they arise from the same course of conduct as the claims of the other Class members.

11. Plaintiffs and their counsel will adequately represent and protect the interests of the Class. Plaintiffs and the Class have a common interest in this matter and the remedy sought. Plaintiffs have no interest antagonistic to that of the Class. Plaintiffs have retained counsel who are competent and experienced in class action litigation and who will prosecute this action vigorously on behalf of Plaintiffs and the Class.

12. Questions of law and fact common to all Class members are present and predominate over any potential individual issues in this matter, and include, *inter alia*:

   a. whether Defendants misrepresented that consumers of their light cigarettes would be exposed to less tar or nicotine than users of non-light cigarettes of the same brand;

   b. whether Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter

Method by the tobacco industry than the levels actually delivered to consumers;

c. whether Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*: modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and by increasing the smoke PH levels of the cigarettes through chemical processing and the use of additives, such as ammonia, resulting in the delivery of greater amounts of tar and nicotine;

d. whether Defendants' conduct violates Section 100.18 Wis. Stats.

e. whether Defendants' conduct was in breach of express and implied warranties with Plaintiffs and the Class in violation of Sections 402.313 and 402.314 Wis. Stats;

f. whether Defendants were unjustly enriched to the detriment of Plaintiffs and the Class; and

g. whether Defendants fraudulently concealed that their "light" cigarettes did not deliver less tar and nicotine than "non-light" cigarettes of the same brand.

13. A class action is superior to other available mechanisms for the fair and efficient adjudication of this controversy because the burden and expense of litigation would likely make it impossible for the members of the Class to seek redress for the conduct complained of herein on an individual basis. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiffs anticipate that there will be no difficulty in the management of this action as a class action.

## ALLEGATIONS COMMON TO ALL COUNTS

14. Defendants marketed, manufactured, distributed and sold light cigarettes in Wisconsin and throughout the United States. Defendants sold their cigarettes under the

brand names Ashford, Basic, Bond Street, Chesterfield, F6, Lark, Longbeach, Marlboro, Merit, Next, Parliament, and Virginia Slims.

15. Defendants distributed, marketed and sold light cigarettes in Wisconsin, including Marlboro Lights.

16. In the late 1960's, scientific studies began correlating higher tar and nicotine levels with an increased risk of developing a smoking related disease, such as lung cancer. This information led to a growing demand for cigarettes with less tar and nicotine.

17. In response, Defendants developed, manufactured, marketed, and sold light cigarettes that purported to deliver less tar and nicotine than regular cigarettes. Defendants intended for consumers to perceive their light cigarettes as delivering less tar and nicotine and as being less harmful than regular full-flavored cigarettes of the same brand.

18. Defendants attempted to ease consumers' minds regarding the dangers of smoking by offering their light cigarettes under an umbrella of less tar and nicotine.

19. Defendants implemented their "lights" advertising campaign throughout the Class period, utilizing the "lights," "ultra-lights," and low-tar descriptors on their cigarettes, including on their cigarette packaging.

20. Defendants intended for consumers to interpret the "Light" label on their cigarettes as signifying that their light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

21. Defendants were aware that the Cambridge Filter Method, a test used by the tobacco industry to test the tar and nicotine content of cigarettes, reflected that less tar and nicotine were ingested by smokers of cigarettes than was actually the case.

22. Defendants designed their light cigarettes to register lower levels of tar and nicotine when tested through the Cambridge Filter Method than were actually delivered to consumers of their light cigarettes.

23. An article published by the National Cancer Institute states that "light cigarettes trick the smoking machine," whereby:

   a. Tobacco companies designed light cigarettes with tiny pinholes on the filters. These "filter vents" dilute cigarette smoke with air when light cigarettes are "puffed" on by smoking machines, causing the machines to measure artificially low tar and nicotine levels.

   b. Many smokers do not know that their cigarette filters have vent holes. The filter vents are uncovered when cigarettes are smoked on smoking machines. However, filter vents are placed just millimeters from where smokers put their lips or fingers when smoking. As a result, many smokers block the vent – which actually turns the light cigarette into a regular cigarette.

   c. Some cigarette makers increased the length of the paper wrap covering the outside of the cigarette filter, which decreases the number of puffs that occur during the machine test. Although tobacco under the wrap is still available to the smoker, this tobacco is not burned during the machine test. The result is that the machine test measures less tar and nicotine levels than is available to the smoker.

   d. Because smokers, unlike machines, crave nicotine, they may inhale more deeply; take larger, more rapid, or more frequent puffs; or smoke a few extra cigarettes each day to get enough nicotine to satisfy their craving. This is called "compensating," and it means that smokers end up inhaling far more tar, nicotine, and other harmful chemicals than the machine-based numbers suggest.

*The Truth About "Light" Cigarettes: Questions and Answers, National Cancer Institute*, available at http://www.cancer.gov/cancertopics/factsheet/Tobacco/light-cigarettes (last visited April 23, 2009) [Hereinafter "*The Truth About 'Light' Cigarettes*"].

24. Defendants intentionally manipulated the design and content of their light cigarettes through, *inter alia*, modifying the tobacco blend, weight, rod length and circumference; using reconstituted tobacco sheets and expanded tobacco; and through intentionally increasing smoke PH levels through chemical processing and the use of additives, such as ammonia, resulting in the delivery of greater amounts of tar and nicotine to consumers.

25. The design of Defendants' light cigarettes increases ventilation, producing smoke that is more mutagenic per milligram of tar than the smoke of non-light cigarettes.

26. "Defendants have known for decades that filtered and low tar cigarettes do not offer a meaningful reduction of risk, and that their marketing which emphasized reductions in tar and nicotine was false and misleading." *United States v. Philip Morris*, Nos. 06-5267, 06-5268, 2009 WL 1423964, at *20 (D.C. Cir. May 22, 2009) (internal citation omitted).

27. Defendants intentionally concealed that smoking their light cigarettes can deliver more tar and nicotine to consumers than smoking their regular cigarettes of the same brand, e.g., because of increases in the mutagenicity of the smoke constituents received by smokers of light cigarettes. On information and belief, the design of Defendants' "light" cigarettes increases ventilation, producing smoke that is more mutagenic per milligram of tar than the smoke of "non-light" cigarettes.

28. The Federal Government's National Cancer Institute (NCI) has concluded that smoking light cigarettes rather than regular cigarettes provides no benefit to smokers' health. *See The Truth About "Light" Cigarettes.*

29. An article published by the NCI states that, "researchers also found that the strategies used by the tobacco industry to advertise and promote light cigarettes are intended to reassure smokers, to discourage them from quitting, and to lead consumers to perceive filtered and light cigarettes as safer alternatives to regular cigarettes." *Id.*

30. Defendants were aware, through their own internal research, that consumers of their light cigarettes often inhale as much or more nicotine and tar than consumers of their non-light cigarettes through unconsciously covering filter ventilation holes with their lips or fingers, taking larger or more frequent puffs, and through holding smoke in their lungs longer than smokers of non-light cigarettes. Due to this smoker "compensation," the light cigarettes do not present a lower health risk to consumers than regular cigarettes.

31. "[T]he smoker will subconsciously adjust his puff volume and frequency, and smoking frequency, so as to obtain and maintain his per hour and per day requirement for nicotine. . . . the subconscious nature of smoker compensation enabled Defendants to mislead the public about the health effects of 'light' cigarettes." *United States v. Philip Morris*, Nos. 06-5267, 06-5268, 2009 WL 1423964, at *22 (D.C. Cir. May 22, 2009) (internal citation omitted).

32. Dr. William Farone, a scientist employed by Philip Morris for eighteen (18) years, has acknowledged that Defendants possessed a "superior knowledge of compensation" and that "there was an 'effort on the part of [his] coworkers at Philip

Morris, including [his] supervisors, to restrict any public acknowledgement on the part of Philip Morris of the phenomena of compensation.'" *United States v. Philip Morris*, Nos. 06-5267, 06-5268, 2009 WL 1423964, at *17 (D.C. Cir. May 22, 2009).

33. Defendants failed to disclose to Plaintiffs and the Class that consumers of their light cigarettes would not be exposed to less tar or nicotine than consumers of non-light cigarettes of the same brand.

34. At all relevant times, Defendants, including their executives who directed their corporate activities, were aware of and accepted the fact that the nicotine present in their cigarettes was primarily responsible for consumers' addiction to smoking, in addition to awareness and acceptance of the fact of smoker compensation.

35. Plaintiff Ljiljana Nikolic started purchasing cigarette products approximately six (6) years ago. During this time period and until 2006, Plaintiff smoked non-light cigarettes. In 2006, **as a result of seeing the "Lights" descriptor on Defendants' light cigarettes, believing that Defendants' light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand, Plaintiff switched to Virginia Slims Light to ingest less tar and nicotine.** In 2006 and thereafter, Plaintiff regularly purchased packs of Virginia Slims Light cigarettes on a weekly basis at local gas stations or retail stores in the State of Wisconsin, and became addicted to Defendants' light cigarettes, particularly, Virginia Slims Light.

36. Plaintiff Kevin E. Konkel started purchasing cigarette products approximately seven (7) years ago. During this time period and until 2006, Plaintiff smoked non-light cigarettes. In 2006, **as a result of seeing the "Lights" descriptor on Defendants' light cigarettes, believing that Defendants' light cigarettes delivered less**

**tar and nicotine and were less harmful than regular cigarettes of the same brand, Plaintiff switched to Marlboro Lights to ingest less tar and nicotine.** In 2006 and thereafter, Plaintiff regularly purchased packs of Marlboro Lights cigarettes on a weekly basis at local gas stations or retail stores in the State of Wisconsin, and became addicted to Defendants' light cigarettes, particularly, Marlboro Lights.

## COUNT I
### Fraudulent Concealment

37.     Plaintiffs reallege and incorporate Paragraphs 1-36 as if fully set forth herein this Count I.

38.     Defendants unlawfully and fraudulently concealed from Plaintiffs and the Class, throughout the class period and at the time they purchased Defendants' "lights" cigarettes at retail (*e.g.,* via public disclosure, signs dedicated for retail stores, and otherwise), that their light cigarettes did not deliver less nicotine or tar and were not less harmful than regular cigarettes of the same brand.

39.     To conceal these facts, Defendants represented their light cigarettes as "Light" or "Ultra-Light" on their product packaging and in all of their advertisements during the Class period, and designed their light cigarettes to register lower levels of tar and nicotine than actually delivered to consumers when tested through the Cambridge Filter Method, used by the tobacco industry to test cigarettes, in order to justify their representation of the cigarettes as "Light" or "Ultra-Light".

40.     Defendants intended that Plaintiffs and the Class rely upon the aforementioned concealments at the time Plaintiffs and the Class purchased Defendants' light cigarettes, and Plaintiffs and the Class purchased Defendants' light cigarettes at retail in reliance upon Defendants' concealments.

41. Indeed, Defendants were aware that, due to their misrepresentations of light cigarettes as Light, Ultra-Light, and low tar, consumers believed their light cigarettes contained less tar and nicotine and were less harmful than regular full-flavored cigarettes of the same brand. Yet, as intended, Defendants did nothing to correct this false pretense, but rather, continued to quietly profit from it.

42. As the manufacturer, distributor, marketer and seller of their light cigarettes, Defendants had a duty to inform Plaintiffs and the Class that their light cigarettes did not deliver less tar or nicotine and were not less harmful than regular cigarettes of the same brand.

43. Despite exercising reasonable diligence, Plaintiffs and other members of the Class could not reasonably have discovered Defendants' concealment of the material fact that Defendants' light cigarettes did not deliver less tar or nicotine and were not less harmful than regular cigarettes of the same brand.

44. The running of the statute of limitations has been tolled with respect to any claims that Plaintiffs or other members of the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein. Defendants affirmatively and fraudulently concealed their unlawful actions and course of conduct from Plaintiffs and the other members of the Class. Plaintiffs and other members of the Class were unable to earlier discover Defendants' acts and conduct, or any of the facts that might have led to the discovery of their wrongdoing with the exercise of due diligence.

45. As a result of Defendants' breach of duties to Plaintiffs and the Class, Plaintiffs and the Class have been damaged in an amount not less than the purchase price of Defendants' light cigarettes or a portion thereof, plus interest.

## COUNT II
### Fraudulent Representations and Deceptive
### Trade Practices in Violation of Wisconsin Statute §100.18(1)

46. Plaintiffs reallege and incorporate paragraphs 1 through 45 as if fully set forth herein in this Count II.

47. Through advertisements and marketing representations featured on their light cigarette products, including, *inter alia*, the terms "Light" and "Ultra-light," Defendants intended to and did misrepresent to Plaintiffs and the Class, at the time of retail purchase and at all relevant times, that light cigarette smokers would receive less nicotine and tar, and a less harmful product, than smokers of regular full-flavored cigarettes of the same brand.

48. After and due to seeing Defendants' advertisements and marketing representations, Plaintiffs reasonably believed, and Plaintiffs and the Class were reasonably likely to believe, that consuming Defendants' light cigarettes was less harmful and resulted in the inhalation of less nicotine and tar than regular full-flavored cigarettes of the same brand.

49. Defendants intended that Plaintiffs and the Class rely upon Defendants' false, deceptive and misleading representations that their light cigarettes (*e.g.,* "Light," "Ultra Light") delivered less tar and nicotine to consumers and were less harmful than regular cigarettes of the same brand.

50. Plaintiffs would not have purchased Defendants' light cigarettes altogether, or would have paid less for these products, had they known that Defendants' light cigarettes did not deliver less nicotine and tar and were not less harmful than regular cigarettes of the same brand.

51. As a result of Defendants' deceptive conduct and practices, Plaintiffs and the Class were damaged in an amount not less than the purchase price of Defendants' light cigarettes or portion thereof, plus interest.

## COUNT III
**Breach of Express Warranty under Section 402.313, Wis. Stats.**

52. Plaintiffs reallege and incorporate Paragraphs 1-51 as if fully set forth herein this Count III.

53. Plaintiffs and the Class are buyers of goods as defined by the Uniform Commercial Code ("UCC"), and Wisconsin Statutes § 402.103 and §402.105.

54. Defendants' representations to Plaintiffs and the Class, including, *inter alia*, the descriptions "Light" or "Ultra-light," featured on Defendants' light cigarette packaging, are express warranties that convey that light cigarette smokers would be exposed to less tar and nicotine than smokers of regular cigarettes of the same brand. 402.313(1)(a), (b) Wis. Stats**.**

55. Defendants' representations to Plaintiffs and the Class, including, *inter alia*, the descriptions "Light" or "Ultra-light" placed on their cigarette packaging that smoking light cigarettes was less harmful than smoking regular cigarettes of the same brand, constitute an express warranty. 402.313(1)(a), (b) Wis. Stats**.**

56. The aforesaid affirmations of fact and promises were part of the basis of the bargain between Plaintiffs and the Class and Defendants when Plaintiffs and the Class purchased Defendants' light cigarettes at retail.

57. Defendants breached the aforementioned express warranties with Plaintiffs and the Class by marketing, selling, and distributing light cigarettes that did not deliver less tar and nicotine and that were not less harmful than regular cigarettes of the same brand.

58. As an actual and proximate result of Defendants' breaches of express warranties with Plaintiffs and the Class, Plaintiffs and the Class were damaged in an amount not less than the purchase price of Defendants' light cigarettes or portion thereof, plus interest.

## COUNT IV
### Breach of Implied Warranty under Section 402.314 Wis. Stats.

59. Plaintiffs reallege and incorporate Paragraphs 1-58 as if fully set forth in this Count IV.

60. Plaintiffs and the Class are buyers of goods for purposes of the UCC, and within the meaning of the Wisconsin Statutes § 402.103 and §402.105.

61. At the time Defendants' light cigarettes left their possession, Defendants knew the purpose for which their cigarettes were manufactured and sold.

62. Pursuant to 402.314 Wis. Stats. as manufacturers, marketers, distributors and sellers of cigarettes, Defendants impliedly warranted to Plaintiffs and the Class that Defendants' light cigarettes were of fair average quality and fit for their purpose — to deliver less tar and nicotine to consumers and to be less harmful than regular cigarettes of the same brand.

63. Defendants' light cigarettes were not of fair average quality and were not fit for the purpose for which they were manufactured and sold, as they did not deliver less tar and nicotine and were not less harmful to consumers than regular cigarettes of the same brand.

64. Defendants' light cigarettes were not merchantable at the time Plaintiffs and the Class purchased them, because they were not of fair average quality and were not fit for the purpose for which they were manufactured and sold, and because the promise and affirmation of fact, printed on their packaging, that they were lighter and delivered less tar and nicotine and were less harmful than regular cigarettes, was incorrect, false, and misleading.

65. Defendants were aware of consumers' reasonable reliance on the implied warranty that their light cigarettes were fit for their purpose of use — that Defendants' light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

66. As an actual and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiffs and the Class were damaged in an amount not less than the purchase price of Defendants' light cigarettes or portion thereof, plus interest.

## COUNT V
**Unjust Enrichment**

67. Plaintiffs reallege and incorporate Paragraphs 1-66 as if fully set forth in this Count V, and pleads this count in the alternative.

68. To the detriment of the Plaintiffs and the Class, Defendants benefited from and were unjustly enriched by Defendants' receipt of monies as a result of Plaintiffs' and the other Class members' purchases of Defendants' light cigarettes, due to Defendants'

concealment and failure to disclose that their light cigarettes did not deliver less tar and nicotine and were not less harmful than regular cigarettes of the same brand.

69. To the detriment of the Plaintiffs and the Class, Defendants benefited from and were unjustly enriched by Defendants' receipt of monies as a result of Plaintiffs' and the other Class members' purchases of Defendants' light cigarettes, due to Defendants' misrepresentation that their light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

70. Defendants had knowledge of, voluntarily accepted, and retained these benefits.

71. Defendants received these benefits to Plaintiffs' detriment.

72. Plaintiffs relied on Defendants' above-described misrepresentations in believing that Defendants' light cigarettes delivered less tar and nicotine and were less harmful than regular cigarettes of the same brand.

73. It would be inequitable, unconscionable, unfair, unlawful, and unjust for Defendants to retain these ill-gotten benefits.

74. As a result of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court:

A. Certifying the proposed Wisconsin Class under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiffs and Plaintiffs' counsel of record to represent the Class;

B. Find that Defendants violated Section 100.18 Wis. Stats, committed a breach of express warranty, a breach of implied warranty of merchantability, fraudulent concealment, and that Defendants were unjustly enriched as alleged herein.

C. Awarding actual, compensatory and consequential damages**, but not damages for personal injury or health care claims**;

D. Awarding restitution of monies or portions thereof that Plaintiffs and the Class paid at retail for Defendants' light cigarettes, and disgorgement of profits Defendants received from their sale of light cigarettes to Plaintiffs and the Class, as provided under applicable law;

E. Establishing a constructive trust consisting of monies Defendants unlawfully received from the sale of light cigarettes to Plaintiffs and the Class as alleged herein, for purposes of establishing a smoker cessation program for their benefit;

F. Awarding punitive and treble damages as provided under applicable law;

G. Awarding reasonable attorneys' fees, costs, and expenses; and

H. Granting any such other relief as it deems appropriate.

Dated: June 16, 2009

**ADEMI & O'REILLY, LLP**

By: /S/ SHPETIM ADEMI
Guri Ademi (SBN 1021729)
Shpetim Ademi (SBN 1026973)
David J. Syrios (SBN1045779)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
gademi@ademilaw.com
sademi@ademilaw.com
dsyrios@ademilaw.com

Of Counsel:

Ben Barnow
**Barnow and Associates, P.C.**
One North LaSalle Street
Suite 4600
Chicago, IL 60602
(312) 621-2000

Larry D. Drury
**Larry D. Drury, Ltd.**
205 West Randolph, Suite 1430
Chicago, Illinois 60606
(312) 346-7950

Burton Finkelstein
**Finkelstein Thompson LLP**
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007
(202) 337-8000

-18-
Case 2:09-cv-00597-LA   Filed 06/16/09   Page 18 of 18   Document 1