# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHARLES WYATT, individually and on behalf
of a class of others similarly situated,**
          **Plaintiff,**

    **v.**                      **Case No. 09-C-0597**

**PHILIP MORRIS USA, INC. and
ALTRIA GROUP, INC.,**
          **Defendants.**

---

## DECISION AND ORDER

    Charles Wyatt seeks to represent a class composed of all Wisconsin residents who purchased light cigarettes manufactured by Philip Morris USA, Inc., between June 16, 2003 and the present.[1] Before me now are plaintiff's motion for class certification and several collateral motions.

    According to plaintiff, from the early 1970s until the summer of 2010, Philip Morris marketed its "Lights" and "Ultra Lights" branded cigarettes as being safer to smoke than regular cigarettes. In his motion for class certification, plaintiff does not point to any marketing materials issued by Philip Morris which stated that Lights and Ultra Lights were safer to smoke than regular cigarettes. Rather, plaintiff contends that Philip Morris's describing its cigarettes as "Light" and "Ultra Light" caused consumers to think that those cigarettes were safer to smoke than regular cigarettes. (Pl.'s Br. in Supp. at 2, ECF No. 38.) Plaintiff seems to imply that, besides using these labels, Philip Morris engaged in

---

[1]Plaintiff has also named Altria Group, Inc., as a defendant. Altria contends that it is not subject to personal jurisdiction in Wisconsin, but it has not moved to be dismissed on that ground. In this opinion, I will write as though Philip Morris USA were the only defendant.

other marketing practices that caused consumers to think that its light cigarettes were safer to smoke than regular cigarettes. However, because plaintiff has not pointed to any other practices in his motion for class certification, I will assume that the only marketing practice that forms the basis for his theory of class certification is the use of the labels "Light" and "Ultra Light" to describe the cigarettes.

Plaintiff contends that Philip Morris's light cigarettes were not safer to smoke than regular cigarettes and that Philip Morris knew that they were not safer to smoke than regular cigarettes. Plaintiff's theory as to why light cigarettes were not safer to smoke is based on the amount of tar and nicotine that consumers can be expected to obtain from them. In the late 1960s, the Federal Trade Commission ("FTC") began testing light cigarettes by having a machine smoke them. If the machine determined that the cigarettes delivered less tar and nicotine than regular cigarettes, then the manufacturer was permitted to market the cigarettes as "Light" (or to use some similar term, such as "Ultra Light"). According to plaintiff, this method of testing the amount of tar and nicotine delivered by a cigarette was flawed. When the machine smoked a cigarette, whether regular or light, it always smoked it in the same way. But actual smokers can change their smoking behavior and thus smoke regular and light cigarettes differently. Plaintiff intends to show that many smokers who smoked light cigarettes smoked them in a way that enabled them to inhale just as much tar and nicotine as they would have inhaled had they been smoking regular cigarettes. For example, a light-cigarette smoker might take harder "puffs" from a light cigarette than from a regular cigarette and thereby draw the same amount of tar and nicotine into his body as he would have had he been smoking a regular cigarette. (See Burns Expert Report ¶ 34, ECF No. 39-1.) Thus, argues plaintiff, Philip Morris was

2

able to design a cigarette that could pass the FTC's test for qualifying as "light" even though the cigarette had the potential to deliver the same amount of harmful substances to an actual smoker as would a regular cigarette. Plaintiff also contends that the tar generated by light cigarettes is actually more toxic than the tar generated by regular cigarettes.

Plaintiff contends that, as a result of Philip Morris's marketing practices, he and the proposed class members purchased cigarettes that were "fundamentally different, more harmful, and less valuable" than the cigarettes Philip Morris advertised. (Pl.'s Br. in Supp. at 1, ECF No. 38.) Plaintiff contends that Philip Morris's conduct violated Wisconsin's Deceptive Trade Practices Act (Wis. Stat. § 100.18), violated Wisconsin's Unfair Trade Practices Act (Wis. Stat. § 100.20), and resulted in unjust enrichment. Plaintiff seeks to recover, for himself and for the class, actual damages (or, with respect to the unjust-enrichment claim, restitution) representing the difference in value between the products as advertised and the products as purchased.

A fundamental requirement for class certification is that the plaintiff be able to show that he and the absent class members have suffered the same injury as a result of the defendant's conduct. Fed. R. Civ. P. 23(a); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). The plaintiff contends that, under his theory of the case, he and the class members have all suffered a common injury as a result of Philip Morris's deceptive marketing practices because those practices caused them to purchase cigarettes that were less valuable than the cigarettes Philip Morris claimed to be selling. Notably, plaintiff contends that the difference in value between the cigarettes purchased and the cigarettes marketed does not depend on how any given class member actually smoked the

3

cigarettes. That is, plaintiff does not contend that the cigarettes were less valuable to a class member only if that class member smoked them in a way that caused her to inhale the same amount of tar and nicotine as she would have inhaled had she been smoking regular cigarettes. Rather, plaintiff contends that it was the fact that it was <u>possible</u> to smoke a light cigarette in a way that would result in the class member inhaling the same amount of tar and nicotine as she would have inhaled had she been smoking a regular cigarette—along with the fact that the tar produced by a light cigarette was more toxic than the tar produced by a regular cigarette—that caused the difference in value. Essentially, the plaintiff contends that (a) Philip Morris's marketing practices caused potential purchasers of light cigarettes to think that if they smoked light cigarettes they would, no matter how they smoked them, be engaging in behavior that posed less of a threat to their health than smoking regular cigarettes—that is, that light cigarettes were what I will call "necessarily safer to smoke" than regular cigarettes, (b) Philip Morris's light cigarettes were not necessarily safer to smoke than regular cigarettes, and (c) the light cigarettes that each class member purchased were less valuable than they would have been had the cigarettes been necessarily safer to smoke than regular cigarettes.

The cental problem with plaintiff's theory of class certification is that it is doubtful that, between 2003 and the present, all Wisconsin purchasers of Philip Morris's light cigarettes believed that such cigarettes were necessarily safer to smoke than regular cigarettes. Indeed, the plaintiff has pointed to no Wisconsin resident, other than himself, who, during the class period, believed that light cigarettes were necessarily safer to smoke than regular cigarettes. Although I am sure that there are many Wisconsin residents who shared plaintiff's belief, it is doubtful that <u>every</u> Wisconsin resident who purchased Philip

4

Morris's light cigarettes between 2003 and the present shared that belief.  Prior to 2003 and throughout the class period, many public disclosures were made which called into doubt the notion that light cigarettes were safer to smoke than regular cigarettes.  For example, in 2001, the National Cancer Institute published a report, known as "Monograph 13," which concluded that there was "no convincing evidence that changes in cigarette design between 1950 and the mid 1980s have resulted in an important decrease in the disease burden caused by cigarette use either for smokers as a group or for the whole population."  (Decl. of Dr. Peter C. English ¶¶ 103–07, ECF No. 41-5.)  Moreover, beginning in 1999 and continuing through much of the class period, Philip Morris itself disseminated information indicating that light cigarettes might not be safer to smoke than regular cigarettes.  (See generally Affidavit of Brendan McCormick, ECF No. 41-45.) The information Philip Morris disseminated included "onserts" on cigarette packages which stated, among other things, that consumers "should not assume that cigarette brands using descriptors like 'Ultra Light,' 'Light,' 'Medium' or 'Mild' are less harmful than 'full flavor' cigarette brands or that smoking such cigarette brands will help you quit smoking."  (Id. ¶ 9.)  Finally, Philip Morris has cited a number of surveys conducted during or shortly before the class period which indicate that a large percentage of smokers did not believe that light cigarettes were safer to smoke than regular cigarettes.  (Decl. of Charles R. Taylor, Ph.D at 14–18, ECF No. 42.)

Accordingly, I cannot assume that every Wisconsin resident who purchased light cigarettes between 2003 and the present did so while operating under the belief that light cigarettes were necessarily safer to smoke than regular cigarettes.  Moreover, the plaintiff has not countered or refuted Philip Morris's evidence showing that it is not the case that

5

every Wisconsin resident who purchased light cigarettes between 2003 and the present did so while operating under the belief that light cigarettes were necessarily safer to smoke than regular cigarettes. Thus, I cannot conclude that the plaintiff and the class members have suffered a common injury. Only those class members who, like plaintiff, actually believed during the class period that light cigarettes were necessarily safer to smoke than regular cigarettes would have been injured by Philip Morris's deceptive marketing practices.

In an attempt to address this problem with his theory of class certification, plaintiff, citing Kohen v. Pacific Investment Management Co. LLC, 571 F.3d 672 (7th Cir. 2009), points out that it is permissible to certify a class even if it likely contains some persons who were not injured by the defendant's conduct. However, Kohen does not stand for the proposition that it is permissible to certify a class where, as here, it likely contains a large number of persons who have suffered no injury at the hands of the defendant. To the contrary, Kohen makes clear that a class cannot be certified if it is defined so broadly that it sweeps within it a large number of persons who were not injured by the defendant's conduct. 571 F.3d at 677-78; see also Oshana v. Coca-Cola Co., 472 F.3d 506, 513–14 (7th Cir. 2006). Moreover, in the present case, unlike in Kohen, the problem is not just that the class as defined likely contains a large number of persons who suffered no injury as a result of Philip Morris's conduct. It is also that it is impossible to distinguish between the class members who were injured by Philip Morris's conduct (i.e., those who believed during the class period that lights were necessarily safer to smoke than regular cigarettes) and those who were not without holding an individualized hearing for each class member at which findings are made about the knowledge possessed by that class member at the time

6

of each of his purchases. The need to hold such hearings would prevent this case from being manageable as a class action. See Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 773–75 (7th Cir. 2013); Thorogood v. Sears, Roebuck & Co., 547 F.3d 742, 747 (7th Cir. 2008). In Kohen, a case in which the class's claim against the defendant involved allegations that the defendant had cornered a futures market, determining which class members were injured and which were not would have involved nothing more than identifying the class members who lost rather than made money as a result of the corner. 571 F.3d at 676. That could have been determined objectively and easily by examining each class member's futures holdings during the corner and would not have involved an inquiry into each class member's mental state.

Accordingly, the need to make individualized inquiries into each class member's knowledge at the time of each purchase to identify those class members who were actually injured by Philip Morris's conduct prevents this case from being certified as a class action. This problem permeates each of plaintiff's causes of action, as explained below.

Plaintiff's first cause of action is based on the Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18. To prevail on this claim, a plaintiff must establish three elements: (1) the defendant made a representation to the public with an intent to induce an obligation; (2) the representation was untrue, deceptive, or misleading; and (3) the representation caused the plaintiff a pecuniary loss. See, e.g., K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc., 301 Wis. 2d 109, 121–22 (2007). Here, the representation is the use of the labels "Lights" and "Ultra Lights," and it seems clear that Philip Morris's use of those labels was intended to induce an obligation. Thus, the first element is not an obstacle to class certification. However, the second and third elements are. The labels

7

"Lights" and "Ultra Lights" are not themselves statements that could have been true or false, and so the only way to prove the second element is to prove that the labels were deceptive or misleading. Plaintiff seems to think that he can prove that the labels were deceptive or misleading without proving that each and every class member was actually deceived or misled—i.e., that he can prove that the labels were objectively deceptive or misleading. However, plaintiff does not identify the standard by which he intends to show that the labels were objectively deceptive or misleading, and therefore I have no reason to think that the plaintiff will be able to prove this element without making individualized inquiries into the subjective beliefs of each class member.

Moreover, the plaintiff does not explain how he would prove that the labels caused all class members a pecuniary loss without showing that all class members were actually deceived or misled. If a class member purchased cigarettes and did not think that they were necessarily safer to smoke than regular cigarettes, then how could that class member have suffered a pecuniary loss? The class member would have received exactly what he thought he was purchasing. Plaintiff points out that it is likely that a class member would be willing to pay more for cigarettes that were necessarily safer to smoke than regular cigarettes than he would for cigarettes that were not. That may be true, but it would be irrelevant unless it were first shown that the class member actually thought that he was purchasing cigarettes that were necessarily safer to smoke than regular cigarettes, since otherwise there is no sense in which he would have sustained a loss. Thus, in order to show that a class member suffered a pecuniary loss as a result of Philip Morris's marketing practices, the plaintiff would first have to show that those practices caused the class member to think that he was purchasing cigarettes that were necessarily safer to smoke

8

than regular cigarettes. Again, this would require individualized inquiries and render the claim unmanageable as a class action.[2]

Perhaps what plaintiff intends to prove is that Philip Morris's deceptive labeling caused the market price for its light cigarettes to be higher than it would have been had the labeling been accurate. Under this theory, every class member would have suffered a pecuniary loss equivalent to the increase in market price caused by the deceptive labeling regardless of whether he was actually deceived, since regardless of whether he was actually deceived he still paid more for his cigarettes than he would have had Philip Morris not used the deceptive labels. However, if this is plaintiff's theory, he has not said that it is or shown that it is plausible. Before I could certify a class on the basis of this theory, I would at least need to see admissible expert testimony on this subject and have some grounds for thinking that the theory has potential merit. See Am. Honda Motor Co., Inc. v. Allen, 600 F.3d 813, 814–19 (7th Cir. 2010). As it stands, the record contains no support for this theory and so cannot serve as grounds for granting plaintiff's motion for class certification. I also note that a similar theory has been rejected as untenable by the

_____

[2]Plaintiff emphasizes that "reasonable reliance" is not an element of a DTPA claim. See Novell v. Migliaccio, 309 Wis. 2d 132, 158 (2008). However, although this is true, it does not cure the problem with plaintiff's theory of class certification, since to prevail on a claim under the DTPA, a plaintiff must still prove that the defendant's deceptive advertising caused the plaintiff to suffer a pecuniary loss. Id. at 150. Here, it is the causation element that gives rise to the need to identify each class member's subjective beliefs: each class member will need to prove that he or she purchased Philip Morris's light cigarettes during the class period because he or she believed that the labels "Lights" and "Ultra Lights" implied that the cigarettes were safer to smoke than regular cigarettes. See Wis. JI—Civil § 2418 (stating that in determining whether a deceptive statement caused the plaintiff a pecuniary loss, the question is whether the statement was a "significant factor" contributing to the plaintiff's decision to purchase the product). Accordingly, the fact that reasonable reliance is not an element of a DTPA claim does not render the claim appropriate for class treatment.

Second Circuit.  See McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 229–30 (2d Cir. 2008).

Plaintiff's claim under the Wisconsin Unfair Trade Practices Act ("UTPA") is virtually indistinguishable from his DTPA claim.  The UTPA, Wis. Stat. § 100.20, grants authority to the Wisconsin Department of Agriculture, Trade and Consumer Protection ("ATCP") to issue "general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair."  Wis. Stat. § 100.20(2). Subsection (5) of this statute provides that a person suffering a "pecuniary loss" because of a violation of an ATCP order may sue to recover double damages, costs, and attorneys' fees.  Plaintiff contends that Philip Morris violated § ATCP 90.02 of the Wisconsin Administrative Code, which is a general order issued by the department under Wis. Stat. § 100.20.  See Wis. Admin. Code ch. ATCP 90, introductory note; Gallego v. Wal-Mart Stores, Inc., 288 Wis. 2d 229, 245 (Ct. App. 2005).  This regulation, which appears in a chapter of the Administrative Code entitled "Fair Packaging and Labeling," states in pertinent part as follows:

> (1)DECLARATION REQUIRED. No person may sell or distribute a consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package. The declaration shall identify the commodity by its common or usual name, by its legally required name if any, or by a generic name or other appropriate description that is readily understood by consumers.
>
> . . . .
>
> (3)DECEPTIVE DECLARATIONS PROHIBITED. The declaration of identity under sub. (1) may not be false, deceptive or misleading. Ingredients or components that are not present in the commodity in substantial or significantly effective amounts may not be featured in the declaration of identity.

10

Wis. Admin. Code § ATCP 90.02. Plaintiff contends that Philip Morris violated § ATCP 90.02 every time it sold a pack of light cigarettes to a class member because the labels "Lights" and "Ultra Lights" on the packaging of those cigarettes were "false, deceptive or misleading." He contends that each class member suffered a pecuniary loss as a result of this violation every time he or she purchased a pack of cigarettes bearing the false, deceptive, or misleading labels. This claim is not maintainable as a class action for precisely the same reason the DTPA claim is not: plaintiff cannot prove that a class member suffered a pecuniary loss without showing that that class member believed at the time of each purchase that the labels "Lights" and "Ultra Lights" meant that the cigarettes were necessarily safer to smoke than regular cigarettes.

Plaintiff's claim for unjust enrichment is not maintainable as a class action for the same reason. The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof. See, e.g., Admiral Ins. Co. v. Paper Converting Mach. Co., 339 Wis. 2d 291, 310 n.16 (2012). The obstacle to class treatment of this claim relates to the third element—proving that every sale of light cigarettes during the class period was made under such circumstances that it would be inequitable for Philip Morris to retain the benefit (i.e., the profits from the sale). Plaintiff contends that he can prove this by showing that the cigarettes were less valuable than they would have been had they been necessarily safer to smoke than regular cigarettes. But as explained, the fact that a class member would have paid more for cigarettes that were necessarily safer to smoke than regular cigarettes is irrelevant unless

11

it is first proved that the class member thought he was purchasing cigarettes that were necessarily safer to smoke than regular cigarettes. If he did not think that he was purchasing cigarettes with that feature, then his receiving cigarettes that did not have that feature would not have resulted in unjust enrichment. Thus, plaintiff's unjust enrichment claim will require individualized inquiries into each class member's beliefs at the time of each purchase and therefore is not maintainable as a class action.

Accordingly, **IT IS ORDERED** that plaintiff's motion for class certification (ECF No. 37) is **DENIED**. The parties' motions for leave to submit supplemental materials (ECF Nos. 62, 65 & 70) are **GRANTED**. Finally, Philip Morris's motion to strike (ECF No. 63) is **DENIED** as **MOOT**, as I did not rely on the disputed materials in the course of deciding the motion for class certification.

Dated at Milwaukee, Wisconsin, this 8th day of August, 2013.


s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge

12